UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

AMADIS PAYANO,

Plaintiff,

v.

CAROYN W. COLVIN, Acting Commissioner, Social Security Administration,

Defendant.

Case No. 2:15-cv-00294-RFB-GWF

**ORDER**

## I. INTRODUCTION

Before the Court for consideration is the Report and Recommendation of the Honorable C.W. Hoffman., United States Magistrate Judge, entered June 28, 2016. ECF No. 16. Plaintiff claimant objected on July 15, 2016. ECF No. 17. Defendant did not respond to Plaintiff's objection. For the reasons discussed below, the Report and Recommendation is adopted in part; Plaintiff's Motion to Remand and Defendant's Cross Motion to Affirm are granted in part and denied in part.

## II. BACKGROUND

Neither party objected to the Magistrate Judge's summary of the background facts, and so the Court incorporates and adopts, without restating, that "background" section here. See Report & Recommendation 1:22–2:5, ECF No. 16.

. .

. . .

### III.     LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). A party may file specific written objections to the findings and recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Local Rule IB 3-2(a). When written objections have been filed, the district court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); see also Local Rule IB 3-2(b).

42 U.S.C. § 405(g) provides for judicial review of the Commissioner's disability determinations and authorizes district courts to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In undertaking that review, an Administrative Law Judge's (ALJ's) "disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007)).

"If the evidence can reasonably support either affirming or reversing a decision, [a reviewing court] may not substitute [its] judgment for that of the Commissioner." Id. at 1035. Nevertheless, the court may not simply affirm by selecting a subset of the evidence supporting the ALJ's conclusion, nor can the court affirm on a ground on which the ALJ did not rely. Garrison, 759 F.3d at 1009–10. Rather, the court must "review the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion," to determine whether that conclusion is supported by substantial evidence. Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

. . .

. . .

. . .

## IV. DISCUSSION

### A. Residual Functional Capacity ("RFC")

In her objection, claimant Payano argues that the Court erred in finding that the ALJ's finding was supported by substantial evidence; specifically, Payano asserted error in failing to recognize the need for a scooter and service dog.

#### 1. Legal Standard

A person claiming disability benefits has the burden of proving he is disabled. Drouin v. Sullivan, 966 F.3d 1255, 1257 (9th Cir. 1992). To establish he is disabled, that person must show "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). And that "he is not only unable to do his previous work but cannot…engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

An ALJ evaluates a person's disability claim under a five-step sequential procedure: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two. (2) Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled. (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is not disabled. If not, proceed to step four. (4) Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five. (5) Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); 20 C.F.R. § 404.1520, 416.920. If a person establishes an inability to perform his or her work, the burden shifts to the Commissioner to show

that the person can perform a significant number of other jobs that exist in the national economy. Hoopai v. Astrue, 499 F.3d 1071, 1074-75 (9th Cir. 2007).

"If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work. Without other reliable evidence of a claimant's ability to perform specific jobs, the Secretary must use a vocational expert to meet that burden. Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights. If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

**2. Discussion**

The ALJ found that although Claimant's RFC did not permit her to do past relevant work under step four, it did allow her to adjust to other work under step five. (A.R. 21-22). With regard to the need for a scooter, the ALJ's opinion provides, ""[I]t appears that the claimant is using a motorized scooter and a walker due to her purported balance problems and not as a direct result of her degenerative disk disease or knee problems. Accordingly, I see no medically determinable impairment that would require the claimant to use a scooter or a walker. I also note that the claimant sat in an electric scooter throughout the hearing but she was able, from a sitting position, to bend down to pick up her service dog and hold it up."

In reviewing the decision, the Report and Recommendation found that Plaintiff had failed to make any argument as to why the need for a scooter or service dog represented significant limitations that would impact Plaintiff's work capacity; that use of a scooter would, if anything, enhance mobility and therefore work capacity; and that although ALJ failed to include the use of a scooter or service dog in his hypothetical to the vocational expert ("VE"), that was harmless error, which did not impact the legal validity of the ALJ's decision.

Payano asserts that she testified that she uses a walker and electric scooter, and that the ALJ's determination of no medically determinable impairment requiring a scooter was in error— Payano underwent an evaluation to determine the need for a scooter. (A.R. 363-365). Dr.

Cheatham found that Payano met the criteria for the scooter and would be homebound without one (A.R. 365). Payano asserts that the record supports her need for a dog for stress relief (A.R. 1934).

The VA record cited by Payano finds the following:

> "[Ms. Payano] Walks with a limp on the left using the rollator, slow cadence, no loss of balance, no evidence of fatigue. She was able to ambulate 50 feet without difficulty . . .
>
> She is currently having difficulty ambulating for short periods and extended periods . . . She . . . would benefit from the use of a power-operated vehicle for her extended mobility function. The Veteran is unable to ambulate or propel a manual wheelchair to meet the mobility and self-care requirements for safe and optimal function within her community environment . . . Without the use of the recommended motorized mobility, it is anticipated that the Veteran will eventually be confined to her home."

It lists among the criteria used to make the determination, her diagnosis of fibromyalgia, abnormality of gait, and her chronic back pain. The same progress notes include a "recommendation" for a three wheeled scooter. The "Current problem list" in the same document includes, "pain in joint involving ankle and food," "chronic pain syndrome," and "overweight."

The Secretary alleges that Plaintiff was first turned down for a scooter and offered a walker instead. The record cited by the Secretary is a VA Progress Note from the same Dr. Cheatham that ultimately recommended a scooter, in which the doctor concluded, "Veteran may benefit from use of a motorized mobility device, and in which she was "referred to PT for functional mobility assessment for use of a motorized mobility device."

The ALJ did not cite to the record in deciding that there was no medically determinable basis for the scooter requirement. The ALJ did not address the VA recommendation, which cited fibromyalgia, abnormality of gait, and chronic back pain, as justifying the recommendation. Rather the ALJ simply asserted, "it appears that the claimant is using a motorized scooter and walker due to her purported balance problems," without providing any support for that conclusion. The remainder of the opinion does not review evidence that would clearly contradict the need for a scooter, with the possible exception of the State Disability Determination Services conclusion that Plaintiff had the RFC to stand or walk for 2 hours in an 8-hour workday. (A.R. 18). In light of VA

Dr. Cheatham's unambiguous recommendation, and determination that without a scooter Plaintiff would eventually be homebound, this finding, never explicitly tied to the determination as to the scooter, does not constitute substantial evidence that there exists no medically-determinable impairment that would require use of a scooter. (A.R. 20). While the opinion does state that there was never an "affirmative diagnosis" of fibromyalgia, A.R. 20, it earlier recognizes that Plaintiff was "assessed to have fibromalgia, obesity, and osteoarthritis." (A.R. 13). At 5'8" and between 236 and 249 pounds, Plaintiff is noted as being severely obese. (A.R. 14).

Thus Plaintiff provided credible evidence in the form of the VA determination, of medically determinable impairment requiring the use of the scooter—indeed that she would eventually be homebound without it—and neither the ALJ nor the secretary have provided substantial evidence that would negate that finding.

This Court is not in a position to determine if the failure to include the need for a scooter in the vocational expert hypothetical constituted harmless error. It is not enough to merely assert that a scooter would enhance mobility and therefore enhance her ability to work. Where Plaintiff is 5'8" and 247lbs, and also needs a sizable device to aid with mobility, it is plausible that the need for the device would inhibit Plaintiff's ability to perform the available work. In any case, any such determination requires an expert opinion.

Plaintiff's citation to Embrey is persuasive: "Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights. If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has *no evidentiary value*." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis added). Even if this is not read as a rule that any error or failure to include each and every limitation renders the entirety of a VE opinion void; the Court finds that where a severely obese petitioner may require a scooter for mobility, it is sufficiently plausible that this would have such an impact on her ability to adjust to other work, and alter the availability of viable employment such that the Court cannot determine if the ALJ's step five decision was supported by substantial evidence.

Plaintiff provides only a single citation to support her claim for the need for a service dog. She cites letter from a VA psychiatrist, Dr. Herbert Goldman, that states that she is being treated for PTSD, and "it is highly recommended that her dog be designated a service animal to accompany her when out in public to provide support and stress relief" and that the designation would "be appropriate due to the severe nature of her Mental Disorder." This alone does not support an assessment that the dog is necessary for Plaintiff to work, nor describe how she would need any dog in a work setting. Any failure to inform the vocational expert of the mere fact of having a properly-designated service dog was harmless error. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) ("'[T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error'").

### B. Departure from VA Determination

#### 1. Legal Standard

"We have held that 'an ALJ must ordinarily give great weight to a VA determination of disability.' McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002) (reversing a denial of benefits because the ALJ "failed to consider the VA finding and did not mention it in his opinion"). Nevertheless, '[b]ecause the VA and SSA criteria for determining disability are not identical,' we have allowed an ALJ to 'give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record.'" Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694-95. In McCartey, the Court recognized and relied on "the marked similarity between [the disability programs of the VA and of the SSA]." Id.

#### 2. Discussion

Plaintiff argues that the ALJ did not give sufficient weight to the VA findings, and failed to give persuasive, specific, and valid reasons for rejecting the VA disability findings. Defendant had argued that the VA disability finding is not medical evidence under SSA regulations and is not binding on the SSA.

The ALJ Opinion stated the following regarding review of the VA determination:

"I have also considered the fact that the claimant testified that she was assessed a disability

rating by the Veterans Administration (VA). This testimony has been corroborated by the VA records. On February 18, 2012, the claimant was awarded 90% disability as follows: 50% sleep apnea; 10% cervicalgia; 10% each hip and 10% asthma. (Exhibit JOE, 3), and on March 14, 2014, she was awarded 70% disability due to PTSD (Exhibit llE). However, I also note that the VA evaluation process and the Social Security disability program are individual programs, each with its own standard for establishing "disability." An evaluation by the VA does not necessarily equate to a finding of "disability" under the Social Security Act, but the VA evaluation must be considered (SSR 96-Sp). In the instant case, VA evaluation assesses percentages but there are no specific findings regarding functional limitations per se which may correspond directly to Social Security Administration standards for the purpose of finding disability under the Act. VA treatment records are in evidence as discussed herein, and I have considered the findings and opinions contained therein, in conjunction with the findings and opinions in the remainder of the medical evidence. The VA record does not contain a function-by-function assessment of the claimant's capabilities per se, such an assessment is required to determine "disability" under the Social Security Act (SSR 96-8p). Even assuming arguendo that the VA evaluation would be interpreted as an opinion that the claimant would be unable to perform work at a medium, light or even a sedentary exertional level on a regular and continuing basis, 8 hours a day, 5 days a week (SSR 96-Sp), such an assessment would be disproportionate to the objective findings reflected in the medical record and is inconsistent with the greater weight of the medical opinion evidence as discussed more specifically herein. Consequently, the results of the VA evaluation cannot be fully credited." (A.R. 20-21).

The Report and Recommendation determined that the above findings constituted specific and legitimate reasons for rejecting the decision. The Court reviewed the basis for the disability determination elsewhere in the ALJ Opinion, and determined that "Despite the VA disability ratings, the ALJ properly found that no further restrictions to plaintiff's maximum residual functional capacity were warranted by plaintiff's mental and physical impairments and symptoms. AR 16,18-19." (ECF No. 16 at 8-9).

Plaintiff argues that the VA misread the 2014 disability determination, which was a total of 90%, with only 70% related to military service, and that the 2014 decision reflected an increase in the percentage determination for PTDS alone. While it is not clear how the decisions relate, the record is clear that as of March 14, 2014, the VA had determined a 70% disability evaluation for PTDSD and major depressive disorder alone.

Plaintiff further argues that "[o]ther than the opinions of the state agency physicians who based their opinions on their review of the VA records, the ALJ's decision was not based upon evidence that was qualitatively different than that assumed by the VA. If the VA relied on an opinion that the ALJ rejected, the deviation from the VA decision will withstand scrutiny. The record does not reflect that the VA relied on a specific opinion that the ALJ rejected The ALJ's RFC assessment is incorrect as a matter of law."

Defendant had argued that the ALJ found that the VA ratings themselves contained no specific findings regarding functional limitations; and that the deficiencies cited in the opinion are sufficient to satisfy the standard. Defendant argued that the ALJ opinion demonstrates that in spite of the VA finding, the ALJ properly reviewed the functional areas to determine that Plaintiff had only mild limitation in daily functions. (A.R. 16). "The ALJ showed a great deal of consideration in determining Plaintiff's RFC, and despite the VA disability ratings, the ALJ properly found that no further restrictions to Plaintiff's maximum residual functional capacity were warranted by Plaintiff's mental and physical impairments and symptoms (A.R. 16,18-19)." Defendant further argued that the ALJ had additional evidence that the VA did not have - the ALJ had the opinions of the State agency physicians who are specifically trained in analyzing cases under SSA rules and regulations (A.R. 18-19). Moreover, the ALJ employs additional factors in determining an RFC that may not be considered by the VA ratings - Plaintiff's credibility.

The later VA disability determination stated that the decision was based on, among other factors: "persistent hallucinations, difficulty in adapting to work, obsessional rituals which interfere with routine activities, and suicidal ideation, and near-continuous panic affecting the ability to function independently, appropriately and effectively." These findings were in turn based on the prior ratings evaluation dated July 10, 2012, as well as the Veterans Affairs Medical Center

treatment records from August 12, 2011 through July 25, 2014, and a VA Examination dated March 14, 2014. Thus the decision was based on some objective evidence, including at least one recent examination, as well as the entirety of her VA record.

It is not a persuasive nor valid reason to depart from a VA finding that "there are no specific findings regarding functional limitations per se which may correspond directly to Social Security Administration standards for the purpose of finding disability under the Act," nor that "[t]he VA record does not contain a function-by-function assessment of the claimant's capabilities per se, such an assessment is required to determine "disability" under the Social Security Act (SSR 96-8p)." The VA, as a separate institution that utilizes a disability system with "marked similarity" to the Social Security system, is nonetheless distinct. Valentine should not be read to require findings by the VA tailored to the specific legal requirements of a Social Security determination.

Nonetheless, where the ALJ recognizes the weight of the VA opinion, but cites to additional evidence, or a different reading of evidence, that may suffice to support reaching a different opinion. See Valentine, 574 F.3d at 695 ("Furthermore, the ALJ benefited from the opinions of the agency psychologists, evidence of [claimant's] work history and post-retirement activities, and the input of the vocational expert.") Here as in Valentine, the ALJ explicitly relied upon the determination of the state agency physicians, A.R. 19, and the ALJ's opinion states that "the undersigned gives the opinion of the DDS significant weight as it is consistent with the record as a whole." (A.R. 18). The ALJ also explicitly based his findings on a specific credibility finding: "I have considered the claimant's own subjective allegations and found them to not be credible regarding the severity of her pain and her ability to work. The alleged severity is not supported by the record as a whole. The Claimant's demeanor and presentation did not support her credibility and the lack of substantial findings with respect to her impairment place her allegations in doubt." (A.R. 18). In light of this evidence, and the specific findings reviewed by Judge Hoffman, the Court affirms the ALJ's decision as to review of the VA determination.

### C. Credibility Determination

#### 1. Legal Standard

If the ALJ rejects the claimant's complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir.1990)). This means the ALJ must state why the testimony is unpersuasive and must point to what specific testimony or evidence undermines the claimant's testimony. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Lester, 81 F.3d at 834. Absent affirmative evidence that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be clear and convincing. Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan, 169 F.3d at 599). And the ALJ "may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). This is because the lack of an objective medical basis is just one factor in evaluating the credibility of a claimant's testimony and complaints. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991).

The Ninth Circuit has upheld an ALJ's finding that a claimant's testimony is not credible when the ALJ cited specific instances in the record supporting this determination. See, e.g., Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). In Parra, the ALJ's credibility determination was upheld because the ALJ pointed to numerous Veterans' Administration lab tests in the claimant's medical records which contradicted his subjective complaints. Id. Similarly, in Batson v. Comm'r of Soc. Sec. Admin., the ALJ cited specific testimony from a doctor which contradicted the claimant's allegations that his ability to work was limited. Batson v. Comm'r of Soc Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2003). But the Ninth Circuit has also found general findings insufficient. See Robbins v. Social Sec. Admin., 466 F.3d 880, 884-85 (9th Cir. 2006). In Robbins, the ALJ in support of his adverse credibility finding to claimant's testimony stated the testimony was "not consistent with or supported by the overall medical evidence of record" and also cited conflicting testimony about claimant's alcoholism. Id. at 884. This was not enough; instead the ALJ was required to provide a "narrative discussion" and state specific evidence in the record supporting an adverse credibility finding. Id. If "evidence reasonably supports either affirming or reversing the ALJ's decision," this Court may not substitute its judgment for that of the ALJ's. Id. (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

In making a credibility determination regarding pain, the ALJ may consider: "the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (citing SSR 88-13).

### 2. Discussion

Regarding credibility, the ALJ found the following: "[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. In reaching this conclusion, I have considered the claimant's own subjective allegations and found them to not be credible regarding the severity of her pain and her ability to work. The alleged severity is not supported by the record as a whole. The claimant's demeanor and presentation did not support her credibility and the lack of substantial findings with respect to her impairment place her allegations in doubt. As such, I find that based on the objective medical evidence of record that the claimant was able to perform less than sedentary work, as described above, from her alleged onset of disability on March 26, 2012 to the date of this decision. The medical source opinions by the DDS and the third party statement of her husband have been considered in accordance with SSRs 96-6p and 06-3p. Based on the review of the record, there is little evidence of a level of impairment that would support the claimant's allegations." (A.R. 18).

After reviewing the relevant legal standard, the Report and Recommendation states the following as to credibility:

> [T]he ALJ found inconsistencies in the cause for her psychiatric symptoms where plaintiff claimed she lay unconscious in the street for four hours after the car bombing but did not receive any medical treatment. AR 19. Regarding the degree or severity of plaintiff's alleged symptoms and ability to work, the ALJ noted that plaintiff worked in skilled or semiskilled positions for five years after the car bombing incident. AR 21. The ALJ noted

that medicines made her dizzy, but were immediately changed. AR 18. Plaintiff claimed that she was being treated for traumatic brain injury, but the ALJ noted there was no objective evidence whatsoever to support plaintiff's allegations. AR 17. Plaintiff claimed to have fibromyalgia, but there was little evidence suggestive of the disease and no evidence of that a formal diagnosis was made based on generally acceptable criteria. AR 20; see Social Security Ruling 12-2p (evaluation of fibromyalgia). The ALJ also noted that plaintiff claimed to have problems with balance, walking, standing and sitting, but plaintiff was observed to sit during the hearing and even bent down to pick up her "service" dog. AR 20. See Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (when assessing credibility, the "inclusion of the ALJ's personal observations does not render the decision improper," so long as they are supported (quotation omitted)). The ALJ noted that plaintiff drives when she has to, and mostly spends her days watching television, taking naps and caring for three dogs. Plaintiff will sometimes fold the laundry and microwave a meal or two, but usually lets her husband cook and handle the chores. AR 17. These activities, though limited, show plaintiff capable of physical and mental tasks, and may be reasonably interpreted as being only self-limiting.

Plaintiff argues that the assertions of demeanor and presentation are insufficient to show lack of credibility: "The ALJ's reliance on his personal observations of Perminter at the hearing has been condemned as "sit and squirm" jurisprudence. Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982). Denial of benefits cannot be based on the ALJ's observation of Perminter, when Perminter's statements to the contrary, as here, are supported by objective evidence. Coats v. Heckler, 733 F.2d 1338, 1341 (9th Cir. 1984)." Claimant further argues that her failure to follow prescribed treatment cannot support the credibility determination given her mental impairment. Finally, claimant argues that ALJ's finding of a lack of objective medical evidence cannot support the finding. See Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005).

As carefully catalogued by the ALJ and reviewed by Judge Hoffman, Claimant's testimony contained what could be properly interpreted by the ALJ as inconsistencies or implausible happenings. While a finding of demeanor or presentation at the hearing alone, weighed against

objective evidence, is insufficient to discredit testimony, that finding, in conjunction with other specific, objective findings, may support a credibility determination. The ALJ's credibility determination laid out "specific, cogent reasons for the disbelief," including specific inconsistencies and contrasts with other evidence. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990)). If "evidence reasonably supports either affirming or reversing the ALJ's decision," this Court may not substitute its judgment for that of the ALJ's. Id. (citing Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). Even if the Court, recognizing Plaintiff's mental illness, discounts the finding as to failure to follow prescribed treatment, the remaining evidence would reasonably support the ALJ's credibility determination.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation (ECF No. 16) is ADOPTED in part. The Report and Recommendation is not adopted with respect to determination regarding the need for the scooter. In all other respects, the Report and Recommendation is adopted. Accordingly, Plaintiff's Motion for Reversal and Remand (ECF No. 12) is granted in part and denied in part, and the Defendant's Cross-Motion to Affirm the Agency's Decision (ECF No. 13) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that this matter be remanded to the Social Security Administration for further proceedings, including further hearings as necessary, to determine whether Payano's RFC, when considered with her age, education, and work experience, allows her to adjust to other work that exists in significant numbers in the national economy.

DATED: October 23, 2017

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**